**Reversed and Remanded and Memorandum Opinion filed June 22, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00384-CV

## IN THE INTEREST OF I.D.R., AND A.B.R., CHILDREN

**On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2018-40587**

## MEMORANDUM OPINION

This appeal arises out of a suit to establish the parent-child relationship. Rejadia Rogers, the mother of I.D.R. and A.B.R. ("Mother"), failed to appear for trial. The trial court entered a default judgment which adjudicated issues of child support, custody, and access rights. Mother's timely-filed motion for new trial was denied. In five issues on appeal, Mother contends the trial court erred when it refused to set aside the default judgment and attacks the sufficiency of the evidence supporting the judgment. We reverse and remand.

# I. FACTS[1]

On June 19, 2018, the Office of the Attorney General of Texas ("OAG") filed suit on behalf of I.D.R. and A.B.R. under Chapter 231, Texas Family Code. The petition sought genetic testing to confirm parentage and to establish child support, access and custody rights. The original petition recites that I.D.R. and A.B.R. "reside with the *mother, REJADIA SHAUNE SMALL ROGERS*" and named Derrick Dion Robinson Jr. as their father. An initial hearing was set for December 4, 2018.

On August 15, 2018, Mother executed a "Waiver of Service" in the case, which recites:

> I have read these documents and understand them. Pursuant to Rule 119, Texas Rules of Civil Procedure, I hereby enter my appearance in this case for all purposes and waive the issuance and service of process, including citation. I understand that this waiver has the same force and effect as if citation had been issued and served on me as provided by law.

Both Mother and Father attended the December 4 hearing. Both signed an agreed "Order for Parentage Testing" which identified Mother as the "Obligee" and Father as the "Obligor." The Order includes a section entitled "Order Setting Hearing" which states, in relevant part:

> The parties are ORDERED to appear before this Court . . . in person or by counsel, at 8:03 o'clock a.m., on February 5, for hearing on the merits.

However, Mother did not appear at the February 5 hearing. On February 6, 2019, the trial court entered a "Default Order Establishing the Parent-Child Relationship." In this order, Father is identified as the "Obligee" and Mother as

---

[1] Because the parties are familiar with the facts of the case and the evidence adduced at trial, we set forth the facts of the case necessary to advise the parties of the court's decision and the basic reasons for it in light of the issues raised. See Tex. R. App. P. 47.1, 47.4.

the "Obligor." The Order required Mother to make monthly child-support payments; it also established a retroactive child-support obligation based on the period from February 1, 2016 to the date of judgment. Father was named managing conservator; Mother was named possessory conservator, with her periods of possession and access "continuously supervised" by Father.

Mother secured legal counsel and timely moved to set aside the default judgment. *See Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). In her motion, Mother alleged that her failure to appear at the February 5 hearing was neither intentional nor the result of conscious indifference, but was primarily due to car trouble. She stated she lived in an area with no public transportation; that on the date of trial her car was not working; that she could not afford to pay for alternative transportation to the courthouse; and that she contacted the court and the OAG on the morning of the hearing in an effort to reschedule. She also stated she was pregnant at that time and was suffering with medical complications arising out of that pregnancy on the day of trial.

Mother's affidavit also set forth facts concerning a meritorious defense. She testified that she had been the primary caretaker for I.D.R. and A.B.R. from birth until early 2018, when Father and members of his family removed them by force from her home. Mother made a report to the Harris County Sheriff's Office about the incident. Based on this, she argued she should have been named either managing conservator or a joint managing conservator.

Finally, Mother stated she could quickly go to trial and offered to reimburse the other parties for reasonable costs and expenses incurred if the motion were granted.

The motion was heard April 10, 2019. Father was duly served but failed to appear. The OAG filed a general denial but offered no evidence. At the hearing,

Mother testified consistent with the facts alleged in her motion for new trial and presented further information on her meritorious defenses. On April 16, the trial court entered an order denying relief. This appeal followed.

## II. ANALYSIS

Mother presents five issues to this Court for review.

ISSUE 1: The trial court abused its discretion by denying Rogers' motion for new trial because she met all the *Craddock* factors for setting aside her post-answer default judgment.

ISSUE 2: The trial court abused its discretion by denying Rogers' motion for new trial because the default judgment was only for a post-answer default and was not a judgment nihil dicit.

ISSUE 3: If the judgment had been nihil dicit, the trial court erred in granting such judgment and abused its discretion in denying Roger's motion for new trial, because Rogers had an answer on file.

ISSUE 4: If the judgment had been nihil dicit, the trial court abused its discretion in denying Roger's motion for new trial because she met all the *Craddock* factors for setting aside a judgment nihil dicit.

ISSUE 5: Rogers is entitled to have the default judgment set aside and to be granted a new trial, because the default judgment's grant of access to Rogers only upon the mutual agreement of Robinson is not supported by legally or factually sufficient evidence.

Mother's first and fourth issues both assert that she met her burden under *Craddock* and that the trial court erred when it found otherwise. Because we believe these issues to be dispositive, we first address whether the trial court abused its discretion when it denied Mother's motion to set aside the default

4

judgment under *Craddock*.

## A. STANDARD OF REVIEW

We review a trial court's denial of a motion to set aside a default judgment for an abuse of discretion. *Cliff v. Huggins*, 724 S.W.2d 778 (Tex. 1987). A default judgment should be set aside and a new trial granted if (1) the failure to answer or appear was not intentional or the result of conscious indifference but was due to a mistake or accident, (2) the defendant sets up a meritorious defense, and (3) the motion is filed at such time that granting a new trial would not result in delay or otherwise injure the plaintiff. *Craddock*, 133 S.W.2d at 126. When a defaulting party moving for new trial meets all three elements of the *Craddock* test, a trial court abuses its discretion if it fails to grant a new trial. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009).

The *Craddock* analysis applies "to all judgments of default, both those entered on failure of a defendant to file an answer and those entered on failure to appear for trial." *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966). For purposes of Mother's first and fourth issues, then, we dispense with determining the type of default judgment entered by the trial court.

### B. APPLICATION OF CRADDOCK FACTORS

#### 1. FAILURE TO APPEAR

The defaulting party's burden as to the first *Craddock* element is satisfied when her factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and those assertions are not controverted by the plaintiff. *See Fidelity and Guar. Ins. Co. v. Drewery Const. Co., Inc.*, 186 S.W.3d 571, 576 (Tex. 2006). We determine this question by looking to the knowledge and acts of the defendant. *Dir., State Emp. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266,

269 (Tex. 1994). We apply this first prong liberally, considering each case on an ad hoc basis. *Ashworth v. Brzoska*, 274 S.W.3d 324, 331–32 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Gotcher v. Barnett*, 757 S.W.2d 398, 401 (Tex. App.—Houston [14th Dist.] 1988, no writ)).

Generally, "some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer [or appear] was not because the defendant did not care." *In re R.R.*, 209 S.W.3d at 115. The absence of an intentional failure to answer or appear, rather than a real excuse for not answering, is the controlling fact. *Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 309–10 (Tex. 2012) (citing *Craddock*, 133 S.W.2d at 125)).

Mother's uncontroverted testimony was that she wanted to come to the February 5 hearing, but was prevented from doing so by car trouble and by medical problems. She testified that her car had electrical problems on the date of the hearing, there was no bus line near her home, and that she could not afford the trip to the courthouse by cab or Uber. She also called the court and the attorney general's office in an effort to reschedule or delay the hearing. Attached to her motion was a screenshot of her cellular telephone's call log, showing several phone calls on the morning of the hearing.

Mother also testified she was about six months pregnant at the time of trial. She testified she was on leave from her job due to complications from that pregnancy; that she was treated at the emergency room for abdominal pain and bleeding the week before trial; and that these symptoms persisted through the trial date. The record includes paperwork from a January 29 emergency room visit diagnosing and addressing those issues. Because of these complications, Mother testified, "I wouldn't have had a chance to even make it [to court] without transportation."

The OAG contends the trial court could have found that Mother failed to meet her burden under the first *Craddock* prong, despite the lack of controverting evidence. First, it suggests the court could have found that Mother's testimony about car trouble was conclusory. *See Nichols v. TMJ Co.*, 742 S.W.2d 828, 831 (Tex. App.—Dallas 1987, no writ). Alternatively, the OAG argues the trial court could have simply disbelieved Mother's testimony. *See Lynch v. Lynch*, 540 S.W.3d 107 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). We disagree with both contentions.

The *Nichols* case relied on by the OAG is distinguishable on its facts. *Nichols* was a breach of contract action between businesses; the defaulting parties were represented by counsel. *Nichols*, 742 S.W.2d at 829. The clients failed to appear for trial and failed to contact the court regarding their whereabouts; this forced their attorney to defend the case in their absence. *Nichols*, 742 S.W.2d at 829. After the trial court entered an unfavorable judgment, the clients moved for new trial based on *Craddock*. Each client filed similar affidavits, blaming their failure to appear on "car trouble." For example:

> On the day this case was set for trial, I experienced car trouble and could not get to the courthouse for the trial. My attorney had already told me he was going to try to have the case reset, so I was surprised to learn the trial had been held without me. My failure to appear at trial was not intentional in any way. In fact, I look forward to telling my side of the story.

*Id.* at 830 (quoting affidavit of client Rex Nichols). The trial court denied their motions for new trial.

The court of appeals dismissed this entire explanation as conclusory. *Id.* at 831. It found neither the explanation of "car trouble," nor the expectation that the trial would be reset, nor their denial that their failure to appear was intentional, without more explanation of any of these factors, met the requirements of the first

7

*Craddock* prong. *Id.*

The OAG's reliance on *Nichols* is flawed for several reasons. The first reason involves the definition of "conclusory" in the context of a default judgment. As the supreme court noted, default judgments have regularly been overturned based on testimony that the service papers were "lost"; such testimony is not conclusory if accompanied by an explanation about surrounding circumstances. *See Drewery Constr. Co.*, 186 S.W.3d at 575 (collecting cases). Such details enable the trial court to determine whether this was a case of accident or mistake. *Id.* at 575-576. In Mother's case, she attempted to notify the OAG and the court that she could not attend the February 5 hearing. By contrast, no such testimony appears in the *Nichols* opinion; in fact, the opinion pointedly notes its absence. *Id.* at 829.

*Nichols* is also distinguishable because the complaining clients were represented by counsel at the time of trial. The trial court was entitled to assume the clients' knowledge and actions on the date of trial were guided or informed by their attorney. No such assumption can be made in this case, as it is undisputed Mother was proceeding *pro se* at the time of trial.

Unlike the clients in *Nichols*, Mother's testimony here supplied substantive facts surrounding her failure to appear for trial which were absent from the three-sentence affidavits set forth in the *Nichols* opinion. For these reasons, we reject the OAG's argument that the trial court could have found Mother's testimony regarding her failure to appear to be conclusory, as the trial court did in *Nichols*.

The OAG next contends that the trial court, sitting as a finder of fact, was free to disbelieve any part of Mother's testimony when it denied her motion for new trial. We disagree. Proof that a party's failure to appear was not the result of intentional conduct or conscious indifference is determined from the knowledge

and acts of the defendant. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38–39 (Tex. 1984). Where, as here, the only proof of the defaulting party's knowledge and acts is uncontroverted, the trial court is not at liberty to disregard that proof. *Drewery Constr. Co.*, 186 S.W.3d at 576. For that reason, the OAG's reliance on the Fist Court of Appeals' decision in *Lynch* is misplaced. *See Lynch*, 540 S.W.3d at 122.

Because we find Mother's proof is the only proof available on this issue, and this testimony could not reasonably be read as showing that Mother acted intentionally or with conscious indifference when she failed to appear for trial, we find that Mother met her burden under the first *Craddock* element.

## 2. MERITORIOUS DEFENSE

A meritorious defense has been set up so as to meet the second *Craddock* prong if the movant's motion and supporting affidavits set forth facts which in law constitute a meritorious defense, regardless of whether those facts are controverted. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). A meritorious defense is one that, if proved, would cause a different result upon a retrial of the case, although not necessarily a totally opposite result. *Jaco v. Rivera*, 278 S.W.3d 867, 873 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Gotcher v. Barnett*, 757 S.W.2d 397, 403 (Tex. App.—Houston [14th Dist.] 1988, no writ)).

Here the default judgment set Mother's liability for back child support based on the time period from January 1, 2016 to the date of judgment. Mother testified that she had possession of the children from January 2016 until at least October 2017, when the children were forcibly taken from her by Father and his family. If proven, Mother would be entitled to, at a minimum, a credit on the award of back child support, and that credit is sufficient to establish a meritorious defense under *Craddock*. *Evans*, 889 S.W.2d at 270; *Jaco*, 278 S.W.3d at 873.

9

We find Mother has met the second prong of the *Craddock* test.

### 3. NO INJURY CAUSED BY DELAY

Mother asserted in her motion for new trial that she could "quickly" go to trial if the motion were granted, and offered to reimburse reasonable expenses caused by the granting of that new trial. This had the effect of shifting the burden to the other parties in the case to present proof of injury. *Evans*, 889 S.W.2d at 270. No such proof has been offered. Moreover, the defendant's willingness to proceed to trial immediately and willingness to pay the expenses, although not dispositive, are important factors for the court to consider when determining whether it should grant a new trial. *See, e.g., Angelo v. Champion Restaurant Equip. Co.*, 713 S.W.2d 96, 98 (Tex. 1986).

We find Mother has met her burden under the third *Craddock* factor.

Because Mother met her burden as to the three *Craddock* factors, the trial court abused its discretion by refusing to set aside its judgment of default. Further, because our resolution affords the greatest relief to Appellant, we need not address her remaining issues. *Dolgencorp of Tex., Inc.*, 288 S.W.3d at 930.

### III. CONCLUSION

We reverse the judgment of the trial court and remand for a new trial.


/s/    Margaret "Meg" Poissant
       Justice


Panel consists of Justices Bourliot, Hassan, and Poissant.